IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNCONQUERED SUN SOLAR
TECHNOLOGIES, INC., a foreign
Corporation,

      Plaintiff,

v.                                           No. 12-CV-1252 MCA/ACT

SOLAR AUTOMATION, INC.,
A New Mexico Corporation,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Solar Automation, Inc.'s *Motion to Dismiss for Lack of Subject Matter Jurisdiction* [Doc. 20]. The Court, having considered the parties' submissions, the relevant law, and being otherwise fully informed in the premises, hereby **DENIES** Defendant's Motion to Dismiss.

### I.   BACKGROUND

Plaintiff, Unconquered Sun Solar Technologies, Inc., is a Canadian corporation with its principal place of business in the County of Essex, Province of Ontario, Canada. [Doc. 18, ¶ 1] Plaintiff manufactures lightweight photo-voltaic panels for use in solar projects. [Doc. 18, ¶ 2] Defendant, a New Mexico corporation with its principal place of business in Bernalillo County, New Mexico, manufactures machines for the production of photo-voltaic cells. [Doc. 18, ¶¶ 3-4] Plaintiff purchased two machines from Defendant for use in Plaintiff's factory. [Doc. 18, ¶ 5] Plaintiff alleges that Defendant

1

made representations upon which Plaintiff relied about the machines' stringing rate, efficiency, low maintenance requirements, and suitability for Plaintiff's purpose. [Doc. 18, ¶ 13]  Plaintiff asserts that the purchase order and Defendant's Standard Terms and Agreements constitute a binding contract.  [Doc. 18, ¶ 5, 20]  Plaintiff alleges that Defendant made certain guarantees, express and implied, with regard to the machines.  [Doc. 18, ¶¶ 37, 41-45]

The Complaint alleges that the machines delivered were "largely inoperable," and that they "frequently cracked photo-voltaic cells during manufacturing, thereby substantially reducing production and increasing the cost of production."  [Doc. 18, ¶ 16]  Further, the machines "failed to tab and string at the rate promised by Defendant and were therefore unsuitable for Plaintiff's intended use.  The Machines were difficult to operate and they required significant and expensive ongoing maintenance."  [Doc. 18, ¶ 16]  Plaintiff alleges that Defendant breached various implied and express warranties.  [Doc. 18, ¶¶ 37-47]

On November 23, 2011, Plaintiff and Defendant entered into a Refund Agreement.  [Doc. 18, ¶ 17]  The substance of the Refund Agreement is as follows:

> This is an agreement between Solar Automation Inc. . . . and Unconquered Sun Solar Technologies. . . .
>
> Solar Automation, Inc., agrees to refund the two Model CTS20 Tabbing and Stringing machines sold to Unconquered Sun for a total of $76,680 USD.  The refund will be paid in full less $5,000 per machine as agreed.
>
> Solar Automation Inc., agrees to "immediately" solicit buyers for the two machines.  The refund will be payable as soon as funds are available or the machines are sold.  Should the machines be sold separately and the funds are available, a partial refund will be made payable to Unconquered Sun

> immediately.
>
> Upon execution of this agreement, both parties agree to a non-disclosure of issues pertaining to the sale of this equipment.

[Doc. 18-1, p. 6]

Over a year after entering into the Refund Agreement, Defendant had not paid Plaintiff a refund. [Doc. 18, ¶ 17] On December 3, 2012, Plaintiff filed this law suit in federal court. [Doc. 1] Through its Second Amended Complaint, Plaintiff brings causes of action for Breach of Contract (based on both the original contract and the Refund Agreement), Negligence, Negligent Misrepresentation and Fraud, Breach of Express Warranty, Breach of Implied Warranties, and Violation of the New Mexico Unfair Practices Act. [Doc. 18] As to damages, Plaintiff seeks $76,680 for the purchase price of the machines and "at least" $360,000 in consequential damages for the loss of production, loss of sales, extra employee expenses and setup costs, and repair or maintenance costs. [Doc. 18, ¶ 18] Plaintiff further seeks punitive damages based on purported fraudulent misrepresentations, as well as compensatory damages, treble damages and attorneys' fees under the New Mexico Unfair Practices Act. [Doc. 18, ¶¶ 36, 59-60]

Plaintiff asserts that the parties are diverse and the jurisdictional amount in controversy is greater than $75,000, and thus this Court has jurisdiction pursuant to 28 U.S.C. § 1332. [Doc. 18, ¶¶ 1-3, 6] Defendant, however, argues that the Refund Agreement is an accord and satisfaction (or at least an accord), that as such Plaintiff is only entitled to relief, if any, recoverable under the Refund Agreement, and that therefore

the amount in controversy is $66,680 and less than the jurisdictional amount. [Doc. 20, pp. 1-2] Accordingly, Defendant asks this Court to dismiss this action for lack of jurisdiction. [Id.]

## II.     ANALYSIS

Section 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state[.]" 28 U.S.C. § 1332(a)(2). "When faced with a challenge to the amount in controversy, the party seeking to assert federal court jurisdiction . . . must demonstrate the potential to recover over $75,000 on its claims." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1171 (10th Cir. 2011). "The amount claimed by the plaintiff in its complaint generally controls and alone can be sufficient to support subject matter jurisdiction." *Id.* (internal quotation marks and citation omitted). Here, considering only the amount of the contract and the amount of consequential damages, Plaintiff has alleged damages in excess of $400,000. [Doc. 18, ¶¶ 11, 18] Thus, the allegations in the Complaint are sufficient to support subject matter jurisdiction.

Where the proponent of federal jurisdiction has met its burden of establishing the jurisdictional amount in controversy, the other party has the opportunity to challenge that showing by establishing to a legal certainty that the jurisdictional amount is not recoverable. *Id.*; *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008). However, our Tenth Circuit has held that, upon an adequate showing of the amount in controversy, jurisdiction is not destroyed even "if the plaintiff's complaint reveals that a perfect

4

defense might be interposed to reduce the alleged amount in controversy below the jurisdictional amount." *Symes v. Harris*, 472 F.3d 754, 759 (10th Cir. 2006).

In arguing that the Plaintiff's damages are limited by the Refund Agreement, Defendant relies on the defense of an accord to reduce the amount in controversy below the jurisdictional amount. [Doc. 20, p. 4] *Id.*; *see also W. Bank of Santa Fe v. Biava*, 787 P.2d 830, 831 (N.M. 1990) (stating that an accord, even without satisfaction, can be considered a defense under certain circumstances); Restatement (Second) of Contracts § 281 (1979) (stating when an accord and satisfaction discharges an original duty). Thus, this case falls squarely within the rule stated in *Symes*, and, accordingly, Defendant has failed to establish to a legal certainty that the amount in controversy falls below the jurisdictional minimum. The Court concludes that it has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a).

### III. CONCLUSION

**WHEREFORE**, **IT IS HEREBY ORDERED** that Defendant's *Motion to Dismiss for Lack of Subject Matter Jurisdiction* [Doc. 20] is **DENIED.**

**IT IS SO ORDERED** this 10th day of March, 2014 in Albuquerque. New Mexico.

_____
M. Christina Armijo
Chief Judge United States District Court